K. W. WEAVER, Appellee, v. NATIONAL FIRE INSURANCE COMPANY, Appellant.

EVIDENCE: Best and Secondary—Value—Absence of Markets.
1   One who is required to prove the "market" value of a thing, when no market, in its usually accepted. meaning, exists at the time and place in question, is not necessarily helpless. He may resort to the best obtainable evidence, even though it be but *circumstances* as to value. *The jury may find it necessary to do some approximating.*

PRINCIPLE APPLIED: Plaintiff, in order to recover under a policy of insurance, was required to prove the "*cash value*" of pop corn at Altoona, Iowa, on a certain date. No market existed at Altoona nor at any other near-by place except Des Moines, Iowa, where there was a market for such corn in small lots. Again, there was no "consumption" market, in its ordinary meaning, at *any* place until such corn had matured in crib for from *one* to *two* years. The corn in question had been picked in the fall and was destroyed in February following.

*Held* competent for plaintiff to show, as a circumstance bearing on value, that for several years he had marketed pop corn

at Des Moines in small quantities at from 3 to 3½ cents per pound, and that the remnant of the corn not destroyed by the fire in question was sold at said place 4 months after the fire at said prices.

EVIDENCE: Best and Secondary—Value—Absence of Market—Cost of Replacing Under Foreign Market. In the absence of a market for a thing at the time and locality in question, it is competent to show, in the light of an existing market at a foreign point, what it would cost to replace the article in question at the locality in question; but such testimony does not necessarily overcome other circumstances tending to show a higher value.

EVIDENCE: Weight and Sufficiency—Amount of Corn in Crib. Evidence reviewed, and held sufficient to support a verdict as to the quantity of corn in a crib.

*Appeal from Polk District Court.*—W. H. MCHENRY, Judge.

NOVEMBER 26, 1917.

ACTION at law upon a fire insurance policy for recovery of the value of a crib of pop corn destroyed by fire. The only issue made upon the trial and presented here is the question of the the amount and value of the property so destroyed. The jury rendered special findings to the effect that the quantity was 78,400 pounds, and that the value thereof was 2¼ cents per pound. A judgment was entered accordingly, and the defendant appeals.—*Affirmed.*

*Sullivan & Sullivan,* for appellant.

*Read & Read,* for appellee.

EVANS, J.—I. The pop corn involved in this controversy was contained in a crib on the plaintiff's premises near Altoona. It was the product of about 24 acres of ground, raised in the year 1915. It was destroyed by fire on February 29, 1916.

Two points are presented for our consideration as grounds for reversal. The first challenges the competency of plaintiff's testimony as to market value, and contends

that there was no evidence of market value except that offered by the defendant, and that the verdict should be reduced accordingly. The policy sued on provided for the payment of the "cash value" of property destroyed by fire. Primarily, the question at issue at this point upon the trial was, What was the market value of this corn on February 29, 1916? The plaintiff had been engaged in raising pop corn and marketing the same for several years. His method of marketing the same had been to sell the same in small lots to grocers and other retail dealers in Des Moines. There was no market therefor at Altoona. There was no market for it in Des Moines except in small lots, as already indicated. That is to say, there was no wholesale market which would take the crop in lump. Manifestly, therefore, the plaintiff could not prove a market value on February 29, 1916, at Altoona, either by the use of market quotations or by the direct testimony of witnesses. This absence of a general market, however, would not necessarily reduce the plaintiff's corn to no value. It would still have a cash market value, and for the purpose of showing the same the plaintiff was entitled to introduce the best evidence of which such a case is capable. The difficulty of the situation was somewhat intensified by another fact, and that is that pop corn is not ready for the consumption market for a period of from 1 to 2 years after it is gathered. It is usually required to be kept in crib for a long period, in order that it may dry thoroughly before it becomes in a popping condition. The plaintiff's corn was not in a popping condition at the time of its destruction, and would not have been in such condition for some months thereafter. In the ordinary course, the plaintiff would have kept the corn in his crib until the popping condition was attained. The plaintiff therefore introduced, over the objection of the defendant, evidence showing in substance that for several years the market, such as it was in Des Moines, where he

had sold his pop corn from year to year, was uniformly from 3 to 3½ cents per pound. He further showed that such was the market in Des Moines in June, 1916, and that such was the price which he received for the remnant of his 1915 crop which had not been destroyed, and which amounted to about 100 bushels. All this evidence was objected to by the defendant as incompetent, and the point is now urged here. We think the evidence thus introduced was the best evidence which the nature of the case permitted. It was in the nature of circumstantial evidence. It did not prove that the plaintiff's pop corn, on February 29, 1916, was worth 3 cents a pound. But it did legitimately throw some light on the question of the actual value of the corn as it was on that date. Inasmuch as there were no daily markets and no market quotations, there was no way that the exact market value of that particular corn on that date could be stated by any witness. The best that any witness could do and the best that the jury could do would be to exercise its best judgment, in the light of all the circumstances, and approximate the market value of the plaintiff's corn on the date in question. The defendant doubtless would have been entitled to an instruction advising the jury of the purpose of such testimony and the limitations put upon it. No objections are urged to the instructions, nor is there any claim that any proper instruction on this subject was refused. We think, therefore, that, in the state of the record as it was when this evidence was introduced, the defendant's objections to it were properly overruled.

2. EVIDENCE: best and secondary: value: absence of market: cost of replacing under foreign market.

The defendant, however, has argued the question in the light of subsequent testimony of an expert witness in its own behalf. The defendant's witness Reuber was one of the few men engaged in the business of buying pop corn in large lots. He testi-

fied that he could have shipped corn from Odebolt, Iowa, to the plaintiff's crib, and replaced the corn on February 29, 1916, for a cent and a half per pound. He also testified that Odebolt made the market of the world on pop corn, because more pop corn is raised and marketed there than in all the rest of the world. Giving full effect to this testimony, yet, if the ruling of the court in receiving the evidence of the plaintiff was proper when made, it would not become erroneous by the subsequent introduction of this testimony by the defendant. The most that can be said for this testimony is that it was proper and admissible. It did not purport to be a market quotation for Altoona or for Polk County. It was merely a deduction from the best data which the witness had. The final responsibility of making deductions, however, was upon the jury, and it was not bound to accept the deduction of any witness, even though expert. The jury found the value to be 2¼ cents per pound. It is urged by the defendant that it has the support of no testimony, and that it is a mere compromise or a splitting of the difference between conflicting testimony. There is a sense in which this is manifestly true, but it is such a compromise as is always present to a greater or less degree in the attainment of approximate justice by deduction from indirect evidence. We think, therefore, that the point here relied upon by appellant is not well taken.

II. It is next urged by defendant that the special finding of the jury as to the quantity of corn was excessive, and without support in the evidence. This quantity was ascertained by computation from the dimensions of the crib. Witnesses for the plaintiff presented computations showing the contents to have been the equivalent of more than 85,000 pounds, counting 70 pounds to the bushel. A witness for the defendant presented a computation showing a probable quantity of something more than 65,000

3. EVIDENCE: weight and sufficiency: amount of corn in crib.

pounds. The jury found the quantity to be 78,400 pounds. The difference between the witnesses was not in the computations of the dimensions nor of the cubic contents of a bushel. The defendant's witness made certain deductions because of husks on the corn, and because of the alleged fact that the 1915 corn was generally not of a high grade, it being assumed, therefore, that the plaintiff's corn would not meet the standard weight by several pounds per bushel. This witness, therefore, deducted 15 per cent for husks and 8 per cent for a supposed deficiency in weight, making a 23 per cent deduction. The basis of this reduction was a mere general estimate, and could have been more or less, according to the point of view of the witness. This estimated reduction was proper for the consideration of the jury, but it was not of that character which could be said to be binding on the jury. Here again was a case where approximation was the best that could be done. The result reached by the jury was justified by the evidence before it. We must hold, therefore, that this point is not well taken. The judgment below is therefore—*Affirmed*.

GAYNOR, C. J., LADD and SALINGER, JJ., concur.